# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Carr*, 2013 IL App (3d) 110894

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KENT CARR, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0894 |
| Filed<br>Rehearing denied | June 24, 2013<br>July 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for criminal damage to government-supported property in the course of an arrest for driving under the influence of alcohol was upheld on appeal, regardless of the fact that the fleet maintenance officer for the State Police stated during his testimony that he "assumed" the State Police vehicle defendant damaged was purchased and maintained with State funds, since his assumption about the funds used for the squad car did not negate the substance of his testimony. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 10-CF-216; the Hon. Cynthia J. Raccuglia, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael J. Greco (argued), of Chicago, for appellant.

Brian Towne, State's Attorney, of Ottawa (Terry A. Mertel and Nadia L. Chaudhry (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion.

Justice Carter concurred in the judgment and opinion.

Justice Schmidt specially concurred, with opinion.

## OPINION

¶ 1    After a bench trial, the court found defendant, Kent Carr, guilty of one count of criminal damage to government-supported property (720 ILCS 5/21-4(1)(a) (West 2010)), one count of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2010)), driving with a suspended license (625 ILCS 5/6-303(a) (West 2010)), and speeding 40 miles per hour over the speed limit (625 ILCS 5/11-601(b) (West 2010)). On appeal, defendant argues the evidence was insufficient to support his convictions for criminal damage to government-supported property and DUI. We affirm.

¶ 2                    FACTS

¶ 3    On May 25, 2010, the State charged defendant by way of indictment with criminal damage to government-supported property by alleging defendant knowingly damaged an Illinois State Police squad car. The charging documents for defendant's other offenses do not appear in the record.

¶ 4    Defendant's bench trial took place on September 13, 2011. The State called Trooper Zachary McNelly as its first witness. McNelly testified that, on May 8, 2010, while on patrol, he was traveling eastbound on Interstate 80 and, at approximately 6:30 p.m., he was near mile marker 82. At that location, he observed a silver minivan, driven by defendant, traveling at a high rate of speed. McNelly activated his front radar and determined that the speed of the vehicle was 105 miles per hour. As a result of the radar reading, McNelly activated his oscillating lights, crossed over the center median to turn west, and stopped defendant's van.

¶ 5    McNelly approached the passenger side of the minivan and noticed a child, approximately two years old, sitting on defendant's lap. McNelly requested defendant to produce a driver's license. Defendant responded to this request by stating that his license was suspended. After McNelly noticed a strong odor of alcohol emitting from defendant's

vehicle, defendant admitted he had consumed two alcoholic beverages. McNelly then asked defendant to perform three field sobriety tests, all of which defendant failed.

¶ 6       McNelly arrested defendant and placed him in the back of his squad car. Since defendant was very tall, he sat in the squad car with his feet on the backseat and his back against the window of the rear driver's side. Once seated in the vehicle, defendant became extremely agitated and began yelling and screaming. As McNelly recited defendant's *Miranda* rights, McNelly heard a loud sound and saw the rear passenger window was shattered. McNelly surmised that defendant kicked the window with his foot.

¶ 7       The State submitted a video from McNelly's squad car into evidence for the court's consideration. The video documented the field sobriety tests and also showed defendant screaming as McNelly read him his *Miranda* rights.

¶ 8       On cross-examination, defendant questioned McNelly regarding his sworn report indicating defendant refused a breath test at the county jail. McNelly agreed he did not offer defendant a breath test due to concerns about officer safety.

¶ 9       Next, Trooper Michael Ketter testified that he worked as a fleet maintenance officer for the Illinois State Police. He stated Central Management Systems of the State of Illinois (CMS) purchased and maintained all of the squad cars and other equipment used by the Illinois State Police. The following exchange then occurred:

"Q. [Assistant State's Attorney]: And how is [CMS] funded, do you know?

A. Through taxes, I'm assuming, for the State of Illinois.

Q. So the state police squad cars are purchased and maintained with State of Illinois funds?

A. Yes, they are."

¶ 10       After the court denied defendant's motion for a directed verdict, the defense called Trooper Kenneth Patterson and Deputy Jack Cavanaugh. According to these officers, defendant attempted to escape from the broken window in McNelly's squad car. Consequently, Cavanaugh's vehicle was selected to transport defendant to the county jail because it was the only "cage car" vehicle available.

¶ 11       Defendant testified in his own defense. He stated that his two-year-old daughter was potty-training, and she crawled into his lap while he was driving because she had to use the bathroom. According to defendant, he pulled over to the side of the road so he could put a "pull-up" on the child before McNelly approached the vehicle to investigate.

¶ 12       Defendant denied that he was impaired, but admitted he had consumed two drinks, including one drink immediately prior to his interaction with the officer. Defendant stated that due to his height and a knee injury, he was uncomfortable in the squad car. As he was adjusting himself, he placed his foot against the window. Defendant stated the ball of his foot applied enough pressure to break the glass, but he did not forcibly kick the window.

¶ 13       Defendant also admitted he was upset, but only because on the way to the jail, McNelly was driving 95 miles per hour with his daughter in his squad car. Defendant denied being transported to the jail in Cavanaugh's car, and instead maintained that he only ever rode in McNelly's car.

¶ 14        The court found defendant guilty of speeding, driving on a suspended license, DUI, and criminal damage to government property. The court stated defendant's credibility was called into question because Trooper Patterson and Deputy Cavanaugh had no motive to lie about transporting defendant to jail in a different vehicle, and yet defendant insisted he was never transferred from McNelly's car. The court also relied on the video from McNelly's car to find that defendant was intoxicated. Defendant was sentenced to 30 months' probation, 146 days in the La Salle County jail, and 1,000 hours of community service. Defendant appeals.

¶ 15                                    ANALYSIS

¶ 16        Defendant argues the State did not prove, beyond a reasonable doubt, that he damaged government-supported property because the fleet maintenance officer testified he was "assuming" the damaged squad car was purchased and maintained with State funds generated by taxes. Consequently, defendant claims the evidence was insufficient to support his conviction for criminal damage to government-supported property and requests this court to reverse his conviction for that offense. Defendant also contends the State's evidence was insufficient to prove him guilty of DUI. The State responds that there was sufficient evidence to convict defendant of both offenses beyond a reasonable doubt.

¶ 17        When faced with a challenge to the sufficiency of the evidence, the reviewing court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The trier of fact is responsible for determining witness credibility, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989).

¶ 18        In this case, the State was required to prove beyond a reasonable doubt that defendant knowingly damaged government-supported property without the consent of the State. 720 ILCS 5/21-4(1)(a) (West 2010). The statute defines "government supported" as "any property supported in whole or in part with State funds." *Id.* To prove this element of the offense, the State called Trooper Ketter, the fleet manager, to provide testimony addressing whether the damaged squad car qualified as "government supported" property.

¶ 19        Relying on *People v. Bartlett*, 175 Ill. App. 3d 686 (1988), defendant argues Trooper Ketter's testimony, standing alone, did not provide proof beyond a reasonable doubt concerning whether the squad car, in this case, constituted government-supported property. After a careful reading of *Bartlett*, we conclude *Bartlett* is not on point and does not provide persuasive authority for defendant's contention that the State's evidence was lacking.

¶ 20        In *Bartlett*, the State did not dispute the insufficiency of the evidence concerning whether the jail cell, purportedly damaged when the defendant threw excrement on the wall, constituted government-supported property. Instead, the State asked the *appellate court* to bolster the State's evidence after the fact and on appeal by taking judicial notice of "the manner in which police lockups are funded." *Id.* at 691. The appellate court refused to take judicial notice of a fact necessary to cure a weakness in the State's evidence below.

¶ 21        Unlike *Bartlett*, the State in this case has not requested this court to take judicial notice of any "missing" fact. Instead, the State relies on fleet manager Ketter's testimony that State

-4-

funds are used to maintain police vehicles to support its argument that the damaged squad car qualified as government-supported property. Trooper Ketter's assumption regarding the origination of those State funds is irrelevant and does not negate the substance of his testimony which established the squad car constituted government-supported property. We conclude this testimony was sufficient to prove McNelly's squad car was "supported in whole or in part with State funds" beyond a reasonable doubt. 720 ILCS 5/21-4(1)(a) (West 2010).

¶ 22    Next, regarding his DUI[1] conviction, defendant argues this conviction was "tainted" because McNelly's DUI report inaccurately stated defendant refused to take a breath test when, in fact, McNelly did not offer defendant an opportunity to complete a breath test. During cross-examination, the officer candidly admitted his report was inaccurate.

¶ 23    The trial court, aware of the inconsistency, was free to consider this evidence when evaluating McNelly's credibility. Instead, the court made a determination that defendant's testimony was not credible because defendant testified he rode in McNelly's squad car to the station when, in fact, defendant was transported in Cavanaugh's vehicle. Upon reviewing the entirety of the record, we conclude the trial court's findings were supported by the record.

¶ 24                                    CONCLUSION

¶ 25    For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

¶ 26    Affirmed.

¶ 27    JUSTICE SCHMIDT, specially concurring.

¶ 28    I concur in the majority's opinion, but write separately to further address defendant's argument that the State failed to prove that he damaged government-supported property. Defendant kicked the window out of a vehicle operated by an Illinois State Police trooper. The car had the words "State Police" written on the outside of the vehicle. Mounted to the vehicle were Illinois State Police license plates. That was enough evidence; Ketter's testimony was fine, but unnecessary.

¶ 29    Defendant relied heavily upon the case of *People v. Bartlett*, 175 Ill. App. 3d 686 (1988), in support of his argument. To my knowledge, no court has followed *Bartlett*, although some courts have distinguished *Bartlett*. See, *e.g.*, *People v. Henderson*, 223 Ill. App. 3d 131

---

[1]We initially note that defendant did not include the case number for the DUI, 10-DT-244, on his notice of appeal, thus documents relating to the charge were not included in the record on appeal. However, because the notice of appeal must be liberally construed, we elect to consider the alleged errors associated with both convictions that purportedly occurred during the same trial. *People v. Decaluwe*, 405 Ill. App. 3d 256, 263 (2010).

(1991); *People v. Smith*, 2012 IL App (2d) 101199-U.[2] For the reasons set forth below, I believe that *Bartlett* was wrongly decided.

¶ 30     Albert Bartlett was arrested by the Addison police, originally for battery. Addison police took him to the Addison police station, where Bartlett further struggled with police. Officers placed Bartlett in a holding cell while they completed the arrest reports. Noticing a foul smell, officers returned to the holding cell area, where they determined that Bartlett had smeared human excrement on the cell wall. He was then charged with criminal damage to State-supported property.

¶ 31     The appellate court reversed, holding that the State failed to prove that the holding cell in the Addison police department met the definition of State-supported property. On appeal, the State argued that the court could take judicial notice of the manner in which police lockups are funded. The *Bartlett* court declined "to supply the proof of a missing element of the offense which would require this court, in effect, to assume the role of advocate for the State on appeal, and would be contrary to the principles of proper judicial review. [Citation.] Instead, we will act only on the record as presented rather than assume a state of facts unwarranted by the record." *Bartlett*, 175 Ill. App. 3d at 691.

¶ 32     I respectfully submit that the *Bartlett* court overlooked the principle of judicial review, which provides that " '[a] conviction can be sustained upon circumstantial evidence as well as upon direct, and to prove guilt beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it.' " *People v. Patterson*, 217 Ill. 2d 407, 435 (2005) (quoting *People v. Williams*, 40 Ill. 2d 522, 526 (1968)). A reasonable inference, if not the only reasonable inference, to be drawn from the evidence in *Bartlett* was that the police lockup was State-supported property as described by the statute. There was no need to take judicial notice. Contrary to the *Bartlett* court and the majority here, I believe there was no "missing" fact in *Bartlett*. I am not as confident as the majority is that the State, in *Bartlett*, conceded the insufficiency of the evidence. We would need to assume that the appellate court addressed each of the State's arguments. That does not always happen.

¶ 33     The statute in question (720 ILCS 5/21-4 (West 2010)) addresses criminal damage to "any property supported in whole or in part with State funds, funds of a unit of local government or school district, or Federal funds administered or granted through State agencies without the consent of the State." 720 ILCS 5/21-4(1)(a) (West 2010). What reasonable inference could be drawn with respect to either a state, county, or municipal police squad car or municipal police department booking areas and holding cells, other than they are property supported in whole or in part with State funds, funds of a unit of local government, or federal funds administered or granted through State agencies? The law has never required a party to jump through hoops to prove the obvious. There was no reason to require the State to call a vehicle fleet supervisor to testify that the squad car was supported by government funds. *Bartlett* was wrongly decided.

_____

[2]I cite to this Rule 23 order as an example of how courts are dealing with *Bartlett*, not as authority for my position.